IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| **BRENDA FORRESTER PIERCE,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 20-05073-CV-SW-MDH-SSA |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | ) |
| **Defendant.** | ) |

## ORDER

Before the Court is Plaintiff Brenda Forrester Pierce's appeal of Defendant Social Security Administration Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act. Plaintiff exhausted her administrative remedies, and the matter is now ripe for judicial review. After carefully reviewing the record, the Court finds that the Administrative Law Judge's decision is supported by substantial evidence in the record as a whole and the decision is **AFFIRMED**.

### BACKGROUND

Plaintiff protectively filed her application on September 7, 2017 (Tr. 12). She stated that she was born in 1961, and alleged disability beginning June 7, 2017, due to multiple impairments, including alcohol-induced mood disorder, alcohol dependence, personality disorder, bipolar disorder, and physical impairments, including osteoarthritis in both hands and knees, bilateral shoulder tendinoplasty, trigger finger of the left hand, an underactive thyroid, and traumatic head injury (Tr. 42, 158, 177). The ALJ found that Plaintiff had the severe impairments of osteoarthritis

of the hands and knees, trigger finger, bipolar disorder, anxiety disorder, personality disorder, and post-traumatic stress disorder (PTSD) (Tr. 14).

The ALJ concluded that Pierce was able to perform a range of medium work and that mentally she could understand, remember, and apply instructions to perform simple tasks; make work decisions commensurate with those tasks; concentrate to work at a consistent pace for two-hour periods; perform job tasks independently, appropriately, and at a consistent pace in goal-oriented work in which job tasks do not have to be completed within a strict time deadline; tolerate occasional interactions with supervisors, coworkers, and the general public; and adapt to occasional changes in a work environment with those limitations. (Tr. at 19). The ALJ limited Plaintiff to simple tasks with no strict deadlines, minimal changes, and infrequent interaction with other people.

## STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the

Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a deficiency in opinion writing is not enough to merit reversal where it has no practical effect on the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

## DISCUSSION

As presented by Plaintiff, the issues in this case are (1) whether the mental RFC was supported by substantial evidence; and (2) whether the ALJ properly considered Plaintiff's subjective reports.

### 1. The ALJ's mental RFC is supported by substantial evidence

To formulate a claimant's RFC, the ALJ is required to use all evidence, "including medical records, observations of physicians, and the claimant's own descriptions of [her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Although the ALJ should not exclusively depend on medical evidence to assess the RFC, there must be some medical evidence that supports the assessed RFC. *See Cox v. Astrue*, 495 F.3d 614 619 (8th Cir. 2007). And "the ALJ must consider at least some supporting

evidence from a medical professional in assessing a claimant's workplace limitations." *Hilburn v. Colvin*, 2016 WL 356045, at *3 (W.D. Mo. Jan. 29, 2016) (*citing Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).

An RFC is an assessment of the most a claimant can do despite any impairments or limitations. 20 C.F.R. § 4041545(a). RFC is based on "all the relevant evidence" in the case record and need not be derived from any single medical opinion. 20 C.F.R. § 404.1545. *See also Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (the ALJ considers medical records, observations of physicians, and a claimant's own description of her limitations in assessing RFC). RFC is an "administrative assessment"–not a medical assessment–and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). *See also* 20 C.F.R. § 404.1546(c)(the ALJ alone is responsible for assessing RFC at the administrative hearing level). In this case, the ALJ acted within his discretion to resolve conflicts in the record, he gave good reasons for the functional limitations he found, and the record does not warrant the assignment of any greater limitations (Tr. 18-19).

Pursuant to the regulations, the ALJ evaluated the opinion evidence and provided detailed summaries of the opinions and his assessments of those opinions. The ALJ found the February 2018 opinion of consultative examiner Mark Altomari, Ph.D., to be "generally persuasive" explaining that Dr. Altomari's findings of no more than moderate impairment in any domain of mental functioning was consistent with her routine treatment, reported improvement in symptoms, and activities of daily living (Tr. 25, 67-69, 74-76). Dr. Altomari's opinion is support by a detailed explanation and multiple references to evidence of record (Tr. 69, 74-76). In assessing RFC, the

ALJ declined to adopt the marked and extreme limitations indicated in the opinions of claimant's therapist, Richard Mulrenin, Psy.D., and medication provider Thomas Kuich, M.D, (Tr. 26, 346-47 (Mulrenin opinion of September 20, 2018), 1076-77 (Kuich opinion of October 2018). The opinions were offered on check-the-box forms, with no supporting narrative explanation or reference to diagnostic evaluation).

Plaintiff maintains that the ALJ gave insufficient weight to the opinions of Dr. Kuich and Dr. Mulrenin, and too much weight to a State agency doctor. While Plaintiff may urge for a different assessment of the evidence of record, this does not establish error in the ALJ's assessment of the record, nor does it provide a basis for remand. An ALJ is never compelled to adopt an unsupported medical opinion, even if it comes from a treating source. *See* 20 C.F.R. §§ 404.1513(a)(2); 404.1520c; *Gross v. Saul*, Case No. 4:19-CV-0504-DGK-SSA, 2020 WL 3287945, at *2 (W.D. Mo. June 18, 2020) ("[I]t is well-established that an ALJ may discredit a medical opinion if that opinion is unsupported by the medical record.") (citation omitted).

Plaintiff next asserts that remand is required because the ALJ provided no medical evidence to support the RFC. Pl.'s Br. at 3. Plaintiff's assertion that the record is without medical evidence to support the ALJ's assessment is simply inaccurate. The ALJ's decision is unusually lengthy and detailed, with many references to the medical evidence–including examination findings, treatment notes, and the medical opinions–as well as other evidence of record to support the disability determination, particularly the many unremarkable findings on mental status examination (Tr. 16-27, 274, 278, 283, 328, 829, 849, 869, 882, 894, 935, 955, 1020, 1045, 1064, 1107, 1121, 1217, 1240-41).).

Plaintiff next criticizes the ALJ's RFC assessment, stating that the fact that treatment notes document normal findings on mental examinations "does not preclude a finding that [Plaintiff] had

significant mental limitations." Pl.'s Br. at 6. Plaintiff is correct. Indeed, that ALJ observed that findings on mental status examination were often unremarkable, yet the ALJ also found severe mental impairments, indicating significant functional limitations. The issue is not whether Plaintiff had limitations–that is not in dispute–but rather, whether those limitations would preclude her from engaging in any work activity. The ALJ recognized the frequent unremarkable mental status findings, the ALJ nonetheless found that Plaintiff had severe mental impairments, and the ALJ properly accounted for the significant limitations arising from those impairments by limiting Plaintiff to simple work, with further limitations in her interactions with colleagues, supervisors, and the public (Tr. 18).

The ALJ's accurate observation that treatment records often reflected normal mental status is entirely appropriate and does not indicate any deficiency or error in the ALJ's assessment. While Plaintiff may prefer that the ALJ ignore these normal findings, such cherry-picking of evidence is contrary to the regulations, which instruct the ALJ to consider *all* the relevant evidence in the case record when assessing RFC–not just the evidence that best supports the Plaintiff's claims while overlooking evidence that contradicts her claims. Plaintiff further urges that she received consistent mental health treatment throughout the relevant period, and "no statements were made that [she] did not need continuing mental health treatment." Pl.'s Br. at 6. Again, the fact that Plaintiff received mental health treatment is not in dispute. The question is not whether Plaintiff had ongoing mental health treatment, but rather, whether her symptoms would preclude all work activity. An individual is not precluded from work simply because they have an ongoing impairment for which they receive ongoing treatment.

While the ALJ is charged with assessing RFC based on all the evidence of record–and not any single medical opinion, or even medical opinions generally, the regulations do, however,

require the ALJ to assess all medical opinions of record and articulate how persuasive he finds such opinions. 20 C.F.R. 404.1520c. The ALJ did just this (Tr. 26). While Plaintiff may disagree with the ALJ's reasons, that disagreement does not establish legal error or a basis for remand.

Plaintiff asserts that it was improper for the ALJ to discount opinions because they were rendered on a check-the-box form. Pl.'s Br. at 6. While an opinion should not be rejected simply because it is presented in a check-the-box form, the ALJ's observation is nonetheless relevant and valid, as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). A bare-bones form, void of any narrative explanation or objective medical findings, is not well-supported, and therefore, appropriately found to be less persuasive. And while treatment records often document Plaintiff's subjective reports of symptoms, they do not document moderate to extreme deficiencies in cognitive function, memory, or concentration, nor do they provide any narrative explanation to support the specific functional limitations identified in the check-the-box forms signed by Dr. Kuich and Dr. Mulrenin. Plaintiff states that the ALJ must look to treatment records from these providers when assessing the opinions–and suggests that the records support the extreme limitations therein–but this is inaccurate, as the ALJ noted and Plaintiff acknowledged, the consistently unremarkable findings on mental status examination, which do not document the extreme limitations in attention, concentration, and focus opined.

This Court's role is to determine whether substantial evidence supports *the ALJ's* decision. The mere fact that Plaintiff pointed to some evidence supporting her position does not justify remand. *See Biestek*, 139 S. Ct. at 1154 ("[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support

*the agency's* factual determinations" (citations omitted, emphasis added)). The ALJ acted within his discretion, cited extensive evidence to support his conclusions, and provided good reasons to explain his decision that Plaintiff was not disabled. The Court finds that the mental RFC is supported by substantial evidence.

   2. **The ALJ properly considered Plaintiff's subjective reports**

When assessing whether a claimant is disabled, the ALJ must consider all of her subjective statements about her symptoms and limitations, but the ALJ need not account for all of a claimant's subjective allegations in the RFC. Rather, the ALJ must determine the extent to which the claimant's allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). *See also* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence, and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings . . ."). The Commissioner's regulations direct an ALJ to give reasons if, as in this case, he does not fully credit the claimant's testimony. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529 (discussing the process for evaluating symptoms); Social Security Ruling (SSR) 16-3p. Here, the ALJ articulated three good reasons, grounded in the regulations and supported by record evidence, for finding that Plaintiff's symptom allegations did not warrant work-preclusive limitations in the RFC. Because substantial evidence supports the ALJ's decision to discount Plaintiff's subjective claims, and because the ALJ gave good reasons for doing so, we ask the Court to affirm his finding. *See Turpin v. Colvin*, 750 F.3d 989, 993-94 (8th Cir. 2014).

First, as required by the regulations, the ALJ considered the objective medical evidence, and concluded that it was inconsistent with the degree of limitation alleged (Tr. 24). *See* 20 C.F.R.

§ 404.1529(c)(2) (Objective medical evidence, such medically acceptable clinical and laboratory diagnostic techniques, is a "useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pay, may have on your ability to work."). As the ALJ observed, mental status examination findings did not support the work-preclusive limitations alleged (Tr. 24). Although examinations sometimes showed that although Plaintiff was sometimes nervous, slightly tense, or depressed, they also consistently showed that she was attentive, with intact judgment, and no evidence of deficit in intelligence or memory (Tr. 17, 24, 274, 278, 283, 286, 328, 829, 849, 882, 894, 935, 955, 985, 1020, 1033, 1045, 1064, 1107, 1121, 1215, 1240). The objective findings on mental status examination and other objective evidence of record supports some limitations, but do not support a finding that Plaintiff's impairments would preclude all work activity.

Second, the ALJ observed that Plaintiff's daily activities were inconsistent with her allegations of disabling symptoms (Tr. 24). *See* 20 C.F.R. § 404.1529(c)(3)(i)(daily activities are properly considered when evaluating a claimant's symptoms). Despite her allegations of disabling anxiety, Plaintiff was able to go to a casino, attend family gatherings, go to the lake, travel for several days by recreational vehicle, fly to Florida, go camping, and help her daughter move, and she planned to borrow a neighbor's jet ski (Tr. 17, 23, 1184, 1302, 1315). She could shop, drive, garden, read, and engage in many activities, all while managing her anxiety (Tr. 17, 214, 220, 1174, 1184). The ALJ also recognized that Plaintiff engaged in self-employment work activity as a house cleaner during the period in which she alleges she was unable to work (Tr. 14). While the work was not performed at the level of substantial gainful activity, it nonetheless suggests that Plaintiff is not as limited as she claims to be. An ALJ may properly note a claimant's work activity, during a period of time in which she alleges disability, as a significant factor in finding his

testimony less than fully consistent. *See, e.g., Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) (among other factors, claimant worked 10 hours per week in a catering business); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (not unreasonable for ALJ to note that claimant's part-time work was inconsistent with claims of disabling pain); 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Plaintiff's ability to engage in these activities–while enjoying her activities and managing her anxiety–is inconsistent with her allegations of work-preclusive mental symptoms.

Third, the ALJ observed that Plaintiff's treatment history was inconsistent with the degree of limitation alleged (Tr. 23). *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v) (medications taken and treatment, other than medications, are properly considered when evaluating subjective symptom testimony). Plaintiff has not required aggressive mental health treatment or psychiatric hospitalization during the relevant period; rather, she has managed her symptoms primarily through medication, with some counseling initiated more than a year after her alleged onset date. *See, e.g., Milam*, 794 F.3d at 985 (ALJ may properly weigh conservative treatment as negative factor in assessing claimant's self-reports); *Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding finding that claimant lacked credibility due in part to "absence of hospitalizations [and] limited treatment of symptoms").

The ALJ observed that Plaintiff had relatively good response to treatment, and often reported that her symptoms were improved or controlled on medication (Tr. 18, 21, 23). Plaintiff has received consistent medication management for bipolar disorder, PTSD, and personality disorder since well before the alleged onset date (Tr. 23), which indicates that her disorders would not preclude all work activity. She has required minimal medication changes aside from the

addition of Lithium in July 2018, due to a concern for a possible episode of hypomania after she reported racing thoughts, restlessness, and increased anxiety (Tr. 23, 1020-21). Moreover, she reported that Lithium was effective in reducing her symptoms (Tr. 23, 1045). She did not begin individual therapy until July 2018, more than a full year after her alleged onset date (Tr. 23). At that time, she reported that she had not experienced any significant depression lately and that her manic episodes had been more mild and manageable in recent years, causing no major problems. She also reported that she had experienced no panic attacks recently and that her sleep problems were greatly helped with medication despite occasional marijuana use and rare use of alcohol (Tr. 23, 1184, 1201-03). Plaintiff's conservative treatment, with routine outpatient care and ongoing medication management, is not indicative of wholly disabling mental impairments.

An ALJ may properly consider such inconsistencies between a claimant's allegations and the record. *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017); 20 C.F.R. § 404.1529(c)(2). Here, the ALJ articulated three independent reasons for finding that Plaintiff's symptom testimony did not warrant greater restrictions–the unremarkable objective findings on examination, the routine and conservative treatment, and Plaintiff's daily activities. The reasons provided by the ALJ comport with the regulations and Eighth Circuit case law and are supported by record evidence. The ALJ did not err in evaluating Plaintiff's subjective reports.

## CONCLUSION

For the reasons set forth herein, the Court finds there is substantial evidence in the record as a whole to support the ALJ's determination. Accordingly, the Commissioner's decision denying benefits to Plaintiff is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: February 23, 2022     　　　　　　　　　　　　　　 */s/ Douglas Harpool*  
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**DOUGLAS HARPOOL**  
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**